IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KATARZYNA TOOMEY,            )
        Plaintiff,    )
                             )
v.                           )   Case No. 11 C 1341
                             )
U.S. DEPARTMENT OF           )
HOMELAND SECURITY,           )
                             )
        Defendant.    )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Katarzyna Toomey has petitioned the Court pursuant to 8 U.S.C. § 1421(c) to review the denial of her application for naturalization. The United States Department of Homeland Security (DHS) has moved to dismiss for failure to state a claim upon which relief can be granted. For the reasons stated below, the Court grants DHS's motion.

### Background

The following facts are taken from Toomey's complaint and the attached appendices.

**1. Toomey's initial entry into the United States and her trip to Mexico in 1995**

On December 24, 1992 Toomey came to the United States on a visitor's visa from Poland. Compl. ¶ 6. In the fall of 1995, Toomey went to visit a boyfriend in California, and they decided to drive to Mexico. Shortly after crossing the border, they decided to return home. Upon attempting to re-enter the United States, Border Control

personnel requested the couple's IDs and green cards.  Toomey did not have a green card and informed the agent that she was from Poland.  The agent requested her passport, but Toomey did not have it with her.  The agent confiscated their vehicle, returned their bags, and refused them entry into the United States.  *Id.* ¶ 8.

Toomey remained in Mexico for about a week.  She then attempted, with the aid of others, to climb a fence to re-enter the U.S.  *Id.* ¶ 9.  She was injured and ultimately arrested by the Border Patrol.  *Id.* ¶ 10 & App'x at 7.  When questioned by Border Patrol agents, Toomey provided a false name (Kasia Monika Zalewska), birth date and story.  *Id.* ¶ 11.  The Border Patrol refused her request to return to Mexico.  Instead, she was fingerprinted and told to report to an immigration judge in San Diego.  Rather than doing so, however, Toomey returned to Chicago.  *Id*. ¶ 11.

**2.     Toomey's application for permanent residence**

In 1998, three years after her trip to Mexico, Toomey filed an I-130 petition pursuant to section 201(b) of the Immigration and Nationality Act ("the Act") seeking classification as the spouse of United States citizen William Toomey.  She also filed an I-485 Application to Register Permanent Residence or Adjust Status pursuant to section 245(a) of the Act.  Compl. ¶ 12  & App'x at 3.

On her I-485 application, Toomey falsely stated that her last date of entry into the U.S. was in 1992 in Chicago (as a visitor) and that she had not departed the U.S. after that date.  Compl. ¶ 12 & App'x at 7.  In connection with her application, Toomey also provided sworn testimony stating the same 1992 date of arrival.  *Id.*  When asked whether she ". . . by fraud or willful misrepresentation of a material fact, ever sought to

procure . . . entry into the U.S., or any other immigration benefit?," Toomey answered "No" and did not disclose the names she had used or her immigration-related arrest in connection with her return from Mexico. *Id.* Toomey has conceded that these statements were false. Compl. ¶¶ 12 & 23.

On April 25, 2003, Toomey's application for permanent residence status was approved, and she became a permanent resident. *Id.* ¶ 13.

### 3. Toomey's naturalization application

In September 2008, Toomey filed a N-400 Application for Naturalization. *Id*. ¶ 14. U.S. Citizenship and Immigration Services (USCIS) informed Toomey that she would be required to appear for an interview on January 29, 2009 as part of the application process. During this interview, Toomey admitted that she had provided false answers and had failed to disclose her 1995 departure from the U.S. on her application and during her interview for permanent resident status. Toomey was questioned extensively about the Mexico incident described earlier. According to Toomey, the interviewing officer stated that the Mexico incident was on file and would have been on file during her interview for permanent residence status. Toomey was informed that she would have to wait for a decision regarding her naturalization application. *Id*. ¶ 15.

USCIS conducted an additional interview of Toomey later in 2008 and again questioned her extensively about the Mexico trip. Toomey was again told that a decision had not yet been made regarding her application for naturalization. *Id*. ¶ 17.

### 4. The denial of Toomey's application

On February 10, 2010, Toomey received a letter denying her application for naturalization. *Id*. ¶ 18. The letter stated that her application was denied because she had failed to establish that she was "lawfully admitted to permanent residence" as required by 8 C.F.R. § 316.2. *Id*. & App'x at 8. Specifically, USCIS determined that as a result of Toomey's misrepresentations in her application for permanent residence and ensuing interview, she had illegally obtained permanent residence status, an immigration benefit. Because she lacked valid permanent resident status, Toomey was unable to satisfy one of the requirements for naturalization. *Id.*

Three months later, in May 2010, Toomey appeared for a hearing regarding the denial of her naturalization application. She was interviewed and repeatedly apologized for her dishonesty. *Id*. ¶ 20 & App'x at 9-11. In November 2010, Toomey was informed that she had "not established that the decision to deny her [application for naturalization] was incorrect as a matter of law." *Id.*, App'x at 4.

## Discussion

Toomey has petitioned for review of the denial of her application for naturalization. DHS has moved to dismiss for failure to state a claim. It argues that because Toomey is not a lawfully admitted permanent resident, she is unable to establish one of the legal requirements for naturalization and thus has no viable claim.

In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint. *E.g., EEOC v. United Airlines, Inc.*, 673 F.3d 543, 544 (7th Cir. 2012). To avoid dismissal, factual allegations must be

4

enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

Toomey filed her complaint *pro se*, without the benefit of counsel. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Nevertheless, even a *pro se* complainant can plead herself out of court by pleading facts that can undermine the allegations set forth in his complaint. *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999).

An applicant for citizenship bears the burden of proving her eligibility. *INS v. Pangilinan,* 486 U.S. 875, 886 (1998). To qualify for naturalization, an immigrant must show that she has:

— resided continuously in the United States for at least five years immediately prior to applying for naturalization "after being lawfully admitted for permanent residence" (plus certain specific residency requirements not pertinent here);

— resided continuously within the United States from the date of the application up to the time of admission to citizenship; and

— during all of these periods "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

8 U.S.C. § 1427(a)(1)-(3); *see also* 8 C.F.R. § 316.2.

Given Toomey's admission in her complaint that she illegally re-entered the

United States from Mexico, she has conceded her ineligibility for permanent resident status. *See* 8 U.S.C. § 1255 (requiring that an applicant be "inspected and admitted or paroled into the United States" to qualify for adjustment of status). Put another way, Toomey's admissions undermine her contention that she was "lawfully admitted to permanent residence." She therefore does not qualify for naturalization under 8 C.F.R. § 316.2.[1] Toomey contends that because the USCIS granted her permanent resident status despite being aware of her illegal re-entry to the U.S., the government should not be able to use her departure and the illegal re-entry as a basis for denying her naturalization application. Toomey's argument amounts to a contention that DHS is estopped from denying her application for naturalization on this basis.

"It is an open question whether equitable estoppel is available against the government." *Solis-Chavez v. Holder,* 662 F. 3d 462, 471 (7th Cir. 2011); *see Office of Pers. Mgmt. v. Richmond,* 496 U.S. 414, 422-22 (1990). But assuming the government may in some circumstances be estopped from enforcing the law, the party asserting an estoppel must first demonstrate that the government's actions constitute "affirmative misconduct." *Solis-Chavez*, 662 F.3d at 472; *United States v. Lair,* 854 F.2d 233, 237–38 (7th Cir. 1988). If the proponent can clear this hurdle, she must satisfy four additional requirements:

> First, the party to be estopped must know the facts. Second, this party must intend that his [or her] conduct shall be acted upon, or must so act that the party asserting estoppel has a right to believe it is so intended. Third, the party asserting estoppel must have been ignorant of the facts. Finally, the party asserting estoppel must reasonably rely on the other's conduct to his [or her]

---

[1] Although Toomey is not entitled to citizenship, that does not mean that she must be deported. The Court understands that Toomey has requested relief from deportation. That is a determination that is up to the immigration authorities in the first instance.

6

substantial injury.

*Id.* at 238 (internal quotation marks and citations omitted); *see Gutierrez,* 458 F.3d at 691 (2006).

Toomey claims that USCIS' grant of permanent residency status satisfies the requirement of affirmative misconduct. In *Gutierrez*, however, the Seventh Circuit concluded that "the government's conduct of acting on information provided voluntarily to it indicating a violation of the immigration laws cannot constitute the type of egregious affirmative misconduct necessary to justify the extraordinary remedy of estoppel." *Gutierrez,* 458 F.3d at 693. Similarly, the fact that USCIS acted upon the information, albeit inaccurate, that Toomey voluntarily provided on her I-485 form does not qualify as affirmative misconduct for purposes of equitable estoppel.

In *Gutierrez,* the plaintiff also contended that the government's use of information provided on his I-485 application as a basis to initiate removal proceedings against him violated certain immigration regulations. *Id.* The Seventh Circuit held that even if there had been a regulatory violation, the government's actions still would not amount to the requisite affirmative misconduct. *Id.* In Toomey's case, the government used the information she provided for the purposes for which it was intended. Thus, USCIS's grant of permanent residence status to Toomey does not qualify as affirmative misconduct for purposes of an equitable estoppel claim.

Even were Toomey able to meet the requirement of affirmative misconduct by the government, she cannot establish all of the remaining requirements for application of equitable estoppel. Among other things, Toomey had to know that her 1995 re-entry

7

was illegal given the manner in which she attempted to be smuggled back into the country. Toomey also admits to actively concealing her 1995 departure and illegal re-entry on her application for permanent residence status. For these reasons, Toomey cannot establish that she was "ignorant of the facts."

## Conclusion

For the reasons stated above, the Court grants the government's motion to file *instanter* as well as its motion to dismiss [docket no. 24] and directs the Clerk to enter judgment against petitioner Katarzyna Toomey.

                                                          _____
                                                          MATTHEW F. KENNELLY
                                                          United States District Judge

Date: July 2, 2012